

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed March 08, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 13 |
| JEREMY W. BOUNDS AND BRANDY | § | |
| ANN BOUNDS, | § | CASE NO. 09-46602 (DML) |
| | § | |
| DEBTORS. | § | |

| | | |
|---|---|---|
| JULIE ANNE ZOGORSKI | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | ADVERSARY 10-04014 |
| | § | |
| JEREMY W. BOUNDS AND BRANDY | § | |
| ANN BOUNDS, | § | |
| DEFENDANTS. | § | |

**MEMORANDUM OPINION**

Before the court is Plaintiff's *Motion for Partial Summary Judgment* (the "Motion") by

which Plaintiff seeks a judgment that the debt to her represented by a judgment entered on

February 5, 2010 by Probate Court #1 of Tarrant County, Texas (the "State Court" and the

"Judgment") awarding Plaintiff damages in the amount of $228,256.46[1] is not dischargable in

Defendants' chapter 13 case pursuant to section 523(a)(4) of the Code. The court held a hearing

on the Motion on August 2, 2010, at which time the parties presented oral argument. The parties

have also filed briefs in support of their positions.

This adversary proceeding is subject to the court's core jurisdiction pursuant to 28 U.S.C.

§§ 1334 and 157(b)(2)(I). This memorandum opinion includes the court's findings and

conclusions. FED. R. BANKR. P. 7052.

## I.    Background

Plaintiff is the administratrix of the estate of Wilma E. Agnew ("Agnew"). Shortly prior

to her death on December 17, 2007, on December 4, Agnew executed a power of attorney (the

"Power") naming Defendant Brandy Bounds ("Brandy") as her agent and attorney in fact.

Defendant Jeremy Bounds ("Jeremy" and, with Brandy, "Defendants") was named as first

alternate under the Power.

Following her appointment, Brandy took various actions that Plaintiff, in this adversary

proceeding (the "Adversary"), claims were defalcations committed by her while acting in a

fiduciary capacity.[2] These actions included (1) appropriating Agnew's bank accounts to her and

Jeremy's use; (2) selling Agnew's automobile to Jeremy's employer for $7,500, less than its fair

value, and appropriating the proceeds of the sale; (3) selling Agnew's stock in Textron, Inc.,

---

[1]    Pursuant to this court's order of December 28, 2009 (the "Stay Order"), the automatic stay of section 362(a) of the Bankruptcy Code (the "Code") (11 U.S.C. §§ 101 *et seq.*) was modified to permit the State Court to liquidate Plaintiff's claims against Defendants and to determine ownership of certain funds interpled with that court. This court reserved for itself remaining issues, including the dischargability of Defendants' debts to Plaintiff.

[2]    Brandy also served as executrix of the estate of Olinda Knight ("Knight"), Agnew's sister. Agnew was a beneficiary under Knight's will, and Plaintiff claims Brandy accordingly had a fiduciary relationship with Agnew in the former's capacity as executrix of Knight's estate.

thereby unnecessarily burdening Agnew's estate with a substantial tax liability; (4) liquidating certificates of deposit in the amount of $41,217.88 and appropriating the proceeds to her and Jeremy's use; (5) after Agnew's death, liquidating savings bonds in the amount of $8,055.98 and appropriating the proceeds to her and Jeremy's use; (6) appropriating a distribution of $10,000.00 and life insurance proceeds of $12,359.41 paid by her in her capacity as executrix of Knight's estate to Agnew; and (7) donating $7,000.00 of Agnew's money to Angels in Waiting, the hospice that assisted Agnew in her last few days. Plaintiff further asserts that Jeremy actively assisted Brandy in her defalcations and benefited from them and so should be denied discharge of his liability on the Judgment pursuant to Code § 523(a)(4).[3]

Plaintiff commenced suit against Defendants in the State Court on the foregoing claims in June of 2008. As authorized by this court, the State Court entered the Judgment on Plaintiff's Motion for Summary Judgment.[4] Although Defendants were initially represented by counsel in the State Court action, at the time of the summary judgment hearing and for some time prior, they were acting *pro se*.

The Judgment is based on the following elements:

1. $180,826.44 drawn by Brandy from Agnew's bank accounts and deposited into her or her and Jeremy's accounts. This sum includes funds deposited in Agnew's accounts prior to her death by Brandy pursuant to the Power, such as from distributions from Knight's estate and the proceeds of the certificates of deposit;

---

[3] Plaintiff also asserts that Defendants embezzled funds belonging to Agnew, thus making their debt to her not dischargable under section 523(a)(4) on that basis as well.

[4] The State Court, in the Judgment, found that Defendants were guilty of defalcations and that such defalcations were the basis of Plaintiff's damages. Given the reservation in the Stay Order to this court of the issue of dischargability, the State Court's findings respecting defalcations are not binding in the Adversary.

2. $5,000.00 from the sale of Agnew's automobile that was never deposited in her

   account;

3. $8,055.00 from the liquidation of savings bonds;

4. $7,000.00 donated to Angels in Waiting;

5. $484.04 in early withdrawal penalties related to liquidation of the certificates of

   deposit; and

6. $26,886.00 in taxes incurred from liquidation of the Textron stock.

Although it is not entirely clear from the record before the court,[5] it appears Brandy had

maintained in the State Court that Agnew meant for her to have the funds referred to in items 1 –

4 above, at least after paying for Agnew's terminal care.  The State Court apparently rejected this

contention.  Based on the record before it, this court agrees that the evidence is insufficient to

raise a fact question on such a basis regarding the sums Defendants took.

Following entry of the Judgment, Defendants commenced a chapter 13 case in this court.

Plaintiff then filed the Adversary.

## II.   Discussion

### A.  Summary Judgment Standard

Rule 56(a) of the FEDERAL RULES OF CIVIL PROCEDURE, applicable pursuant to Rule 7056

of the FEDERAL RULES OF BANKRUPTCY PROCEDURE, provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "If a party

fails to properly support an assertion of fact or fails to properly address another party's assertion

---

[5]  Plaintiff designated as summary judgment evidence portions of Defendants' depositions and testimony given by Brandy before the State Court in an injunction hearing.  Although Defendants requested that the court review complete transcripts of the depositions and court testimony, they did not provide those transcripts to the court.

of fact . . . the court may  . . . (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it . . . ." FED. R. CIV. P. 56(e).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  In determining whether the nonmoving party has properly shown that a genuine issue for trial exists, the court should "construe all facts and inferences in the light most favorable to the nonmoving party . . . ." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

B.  Section 523(a)(4)

Code § 523(a)(4) provides:

(a) A discharge . . . does not discharge an individual debtor from any debt –

. . .

(4)      for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

Thus, in order to prevail on the Motion, Plaintiff must show that there is no factual dispute that (1) Brandy and/or Jeremy was acting in a fiduciary capacity; and (2) while so acting, committed a defalcation.  It is clear that the fiduciary relationship must be actual, not a legal fiction.  *See Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987) (for a fiduciary relationship to fall within section 523(a)(4), "[t]he debtor must have been a trustee before the wrong and not a trustee *ex maleficio*"); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir. 1980) (per curiam) (section 17(a)(4) [of the Bankruptcy Act of 1898] does not apply to fiduciary relationships arising out of equitable or implied trusts but only to true trusts); *see also* COLLIER ON BANKRUPTCY ¶ 523.10[1][d] nn.16 & 17 (16th ed. 2010).

1. Jeremy

Jeremy was not acting in a fiduciary capacity at any time pertinent to the Adversary. A debtor not acting in a fiduciary capacity cannot fall within section 523(a)(4) for behavior which allegedly amounted to "fraud or defalcation while acting in a fiduciary capacity," though, with respect to embezzlement or larceny, "the discharge exception applies even when the embezzlement or larceny was committed by someone not acting as a fiduciary." COLLIER ON BANKRUPTCY ¶ 523.10[1][d] (16th ed. 2010); *see also Matter of Burgess*, 106 B.R. 612, 621 (Bankr. D. Neb. 1989) (person not acting in a fiduciary capacity cannot have a debt declared nondischargeable under section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, though "debts arising from larceny are excepted from discharge whether or not the debtor acted in a fiduciary capacity").

Although Jeremy was named as first alternate in the Power, he never was required to substitute for Brandy. That he benefited from any defalcation by Brandy does not alone satisfy the requirements of section 523(a)(4). To the extent that his conduct may be alleged to amount to embezzlement or larceny, the summary judgment record is inadequate to support a finding to that effect. Because Jeremy was not serving as a fiduciary vis-à-vis Agnew and because the record is insufficient as to embezzlement or larceny, Plaintiff is not entitled to summary judgment under Code § 523(a)(4) as to Jeremy, and the Motion must be, as to him, DENIED.

2. Brandy

There is no question that Brandy was acting in a fiduciary capacity. The Power created a fiduciary relationship between her and Agnew.[6] *See Vogt v. Warnock*, 107 S.W.3d 778, 782-84

---

[6]    While she was also acting as a fiduciary in her capacity as executrix of Knight's estate, the evidence does not support a finding of defalcation in her actions as such. Though the distributions and insurance proceeds mentioned above may have eventually found their way to Defendants' account, the distribution of those

(Tex. App.—El Paso 2003, pet. denied) (power of attorney created fiduciary relationship as a matter of law, even where party possessing power of attorney never exercised the power).  To the extent that she used the Power to transfer funds into her and her and Jeremy's bank accounts or otherwise converted Agnew's property to Defendants' use, she committed a defalcation.  *See Matter of Burgess*, 106 B.R. at 621 (debtor with power of attorney committed defalcation by transferring assets of his principal to himself for his own benefit, and thus debt was nondischargeable under section 523(a)(4)); *In re Barwick*, 24 B.R. 703, 705-06 (Bankr. E.D. Va. 1982) (grant of power of attorney created express trust through which debtor entered into fiduciary relationship with principal which debtor breached by obtaining money from principal to use for his personal affairs); *Johnson*, 73 S.W.3d at 200 (fiduciary relationship imposes duty on agent to act for the benefit of principal and to avoid acting as an adverse party without the principal's consent (citing RESTATEMENT (SECOND) OF AGENCY § 13, cmt. a (1958))).

In the case at bar, Brandy clearly committed a defalcation to the extent that she appropriated Agnew's money and property to her and Jeremy's use.  The evidence reflects that she used Agnew's funds for house repairs, church tithes and other personal expenses.  Absent a writing or other evidence that Brandy's appropriations were in accord with Agnew's wishes – and assuming Agnew was competent to form such desires – the court must conclude that Brandy committed defalcations with respect to the $180,826.44 transferred from Agnew's accounts, the $5,000.00 from the sale of Agnew's automobile, and the $8,055.98 in proceeds of Agnew's savings bonds.

On the other hand, the incurrence of tax consequences of the sale of the Textron stock and the $484.04 in early withdrawal penalties resulting from liquidation of the certificates of

---

monies in her capacity as executrix was to Agnew and therefore proper.  It was pursuant to the Power, and, hence, in a different fiduciary capacity that Brandy appropriated those monies.

deposit do not clearly amount to defalcations. Brandy testified that she sold the stock and called in the certificates of deposit in anticipation of needing the funds to provide care for Agnew. Brandy's actions were within the scope of her authority under the Power. Accordingly, at least on the summary judgment record, there is an issue of fact that might be resolved by a jury in Brandy's favor as to whether her conduct amounted to a defalcation. Therefore, the court is not prepared to find that Brandy's decision to liquidate the certificates of deposit and sell the Textron stock constituted breaches of her fiduciary duties.

Similarly, the court is not satisfied that the donation to Angels in Waiting was not within Brandy's authority under the Power. While the principal of Angels in Waiting, Tairee Grimes, testified (apparently[7]) that, in connection with seeking certification as a hospice care provider, the services provided to Agnew were to be for free, a donation in consideration of those services (despite their very short duration) was not necessarily inappropriate and so not a defalcation as a matter of law.

The Power is quite broad in its grant of authority to "act for [Agnew] in any lawful way." Certainly making a gift to a gratuitous care provider is lawful and it is reasonable for the court to infer that the gift to Angels in Waiting was made consistently with what Brandy reasonably believed were Agnew's wishes. In any event, the gift to Angels in Waiting involved no self-dealing of the sort that tainted Brandy's handling of most of Agnew's funds.

To the extent the debt represented by the Judgment is attributable to taxes resulting from the Textron sale, the certificate of deposit early withdrawal penalty and the gift to Angels in Waiting, the Motion must be DENIED.

---

[7] The transcript of Ms. Grimes's deposition, like those of testimony by Brandy and Jeremy, is incomplete, but the court may infer from the portions before it that Angels in Waiting anticipated providing services to Agnew without charge.

For the reasons stated above, as to Brandy the Motion must be GRANTED in part and DENIED in part.

### III.  Conclusion

Plaintiff is entitled to summary judgment against Defendant Brandy Bounds in the amount of $193,882.42, with interest at the rate applicable under Texas law from February 5, 2010.  Plaintiff is not entitled to summary judgment pursuant to Code § 523(a)(4) as to Defendant Jeremy Bounds.  The Motion is accordingly granted in part and denied in part. Plaintiff's counsel is directed to prepare and submit a partial judgment consistent with this memorandum opinion.

# # # # END OF MEMORANDUM OPINION # # # #